UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| OLAN D. WILLIAMS, | ) | No. CV-08-3075-CI |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner | ) | MOTION FOR SUMMARY JUDGMENT |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 22.)  Attorney D. James Tree represents Olan D. Williams (Plaintiff); Special Assistant United States Attorney Mathew W. Pile represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.)  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff filed for disability insurance benefits (DIB) on June 8, 2005.  (Tr. 74-78.)  He alleged disability due to retinal artery occlusion in his right eye, stroke causing left homonymous hemianopia, and thyroid condition, with an alleged onset date of February 16, 2005.  (Tr. 74, 90.)  His claim was denied initially and on reconsideration.  (Tr. 62, 55.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on

July 17, 2008, before ALJ Richard Say. (Tr. 42, 441-74.) Plaintiff, who was represented by counsel, and vocational expert Gary Jesky (VE) testified. (Tr. 442.) Sandra Lemley, lay witness and a friend of Plaintiff's, also testified. (*Id*.) The ALJ denied benefits in a decision dated June 25, 2008[1] (Tr. 12-19) and the Appeals Council denied review. (Tr. 4-6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 45 years old. (Tr. 447.) He testified he was enrolled in school until tenth grade, but only attended classes through sixth grade. He did not obtain a high school equivalency degree. (Tr. 447-48.) He was unmarried and lived in a modular home with Sandra Lemley, his significant other and his teenage daughter. (Tr. 449.) He stated his daughter and Ms. Lemley helped him with activities of daily living, and he sometimes did household chores. (Tr. 453.) Plaintiff had work history as a garbage truck driver for 15 years. (Tr. 91.) He suffered a back injury in 2000, for which he had surgery, and returned to work until 2005, when he had a stroke. (Tr. 449-50.) He testified he could no longer work due to vision problems, back and breathing problems. (Tr. 451.) Plaintiff stated he had not sought treatment for his breathing problems and

---

[1] The ALJ's decision was dated June 25, 2008, as the result of a clerical error. (Tr. 19.) The ALJ's decision, which discusses vocational expert testimony taken at the July 17, 2008, was in fact rendered on July 25, 2008.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  continued to smoke.  (Tr. 452.)

2                    **ADMINISTRATIVE DECISION**

3      At step one, ALJ Say found Plaintiff had not engaged in
4  substantial gainful activity since the alleged onset date.  (Tr.
5  14.)  At step two, he found Plaintiff had severe impairments of
6  "obesity; degenerative disc disease in his lumbar spine, status post
7  laminectomy, post cardiovascular accident and stenting with vision
8  loss."  (*Id.*)  He found symptoms and complaints of depression,
9  anxiety, hypertension, sleep apnea, and shortness of breath also
10  appeared in the record, but in combination and alone these medically
11  determinable impairments were not severe.  (*Id.*)  At step three, ALJ
12  Say determined the impairments, alone and in combination, did not
13  meet or medically equal one of the listed impairments in 20 C.F.R.,
14  Pt. 404, Subpt. P, Appendix 1 (Listings).  (*Id.*)  He found
15  Plaintiff's statements regarding his symptoms and limitations were
16  "not credible to the extent they are inconsistent with the residual
17  functional capacity assessment."  (Tr. 16.)  At step four, he
18  determined Plaintiff had the residual functional capacity (RFC) to
19  perform sedentary level work, with the following  non-exertional
20  limitations:

21         He is able to perform simple reading, writing and
           arithmetic.  He can occasionally stoop, crouch, crawl and
22         kneel.  He can occasionally climb ramps and stairs, but
           should avoid ladders.  Reduced visual acuity in his right
23         eye limits his depth perception and peripheral vision in
           his left eye is also limited.  He is restricted to driving
24         an automobile during daytime hours.

25  (Tr. 15.)

26      Based on this RFC and VE testimony, the ALJ found Plaintiff was
27  unable to perform his past work as a garbage/recycling truck driver.

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  (Tr. 17.)  Proceeding to step five, ALJ Say determined Plaintiff was

2  able to perform other jobs that existed in significant numbers in

3  the national economy, such as packing line worker and small products

4  assembler.   (Tr. 18.)   He concluded Plaintiff was not under a

5  "disability" as defined by the Social Security Act at any time

6  through the date of his decision.  (*Id.*)

7  **STANDARD OF REVIEW**

8  In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

9  court set out the standard of review:

10  A district court's order upholding the Commissioner's
denial of benefits is reviewed de novo. *Harman v. Apfel*,

11  211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
Commissioner may be reversed only if it is not supported

12  by substantial evidence or if it is based on legal error.
*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

13  Substantial evidence is defined as being more than a mere
scintilla, but less than a preponderance.  *Id.* at 1098.

14  Put another way, substantial evidence is such relevant
evidence as a reasonable mind might accept as adequate to

15  support a conclusion.  *Richardson v. Perales*, 402 U.S.
389, 401 (1971).  If the evidence is susceptible to more

16  than one rational interpretation, the court may not
substitute its judgment for that of the Commissioner.

17  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

18

19  The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and resolving

20  ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
Cir. 1995).  The ALJ's determinations of law are reviewed

21  *de novo*, although deference is owed to a reasonable
construction of the applicable statutes.  *McNatt v. Apfel*,

22  201 F.3d 1084, 1087 (9th Cir. 2000).

23  **SEQUENTIAL PROCESS**

24  Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

25  requirements necessary to establish disability:

26  Under the Social Security Act, individuals who are
"under a disability" are eligible to receive benefits.  42

27  U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any
medically determinable physical or mental impairment"

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the

1  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

2  1230 (9th Cir. 1987).

3                                    **ISSUES**

4       The question is whether the ALJ's decision is supported by

5  substantial evidence and free of legal error.  Plaintiff argues the

6  ALJ erred when he: (1) rejected mental health impairments and his

7  sleep disorder at step two; (2) failed to develop the record further

8  at step two; (3) improperly rejected the opinions of treating and

9  examining medical providers; (4) improperly rejected his testimony

10 and lay witness testimony; and (4) failed to meet the Commissioner's

11 burden at step five.  (Ct. Rec. 18 at 9-10.)

12                                 **DISCUSSION**

13 **A.   Credibility**

14      Plaintiff argues the ALJ failed to give specific, "clear and

15 convincing" reasons for discounting his testimony, and the testimony

16 of Sandra Lemley, his significant other.  (Ct. Rec. 18 at 16-19.)

17 When a claimant's statements as to the severity of impairments, pain

18 and limitations are found not credible, the ALJ must set forth

19 findings sufficiently specific to permit the court to conclude the

20 ALJ did not arbitrarily discredit claimant's allegations.  *Thomas v.*

21 *Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*,

22 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  It is well-settled,

23 however, that an ALJ cannot be required to believe every allegation

24 of disabling pain, even when medical evidence exists that a

25 claimant's condition may produce pain.  "Many medical conditions

26 produce pain not severe enough to preclude gainful employment."

27 *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Although an

28

adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, medical evidence is a relevant factor to consider. *Social Security Ruling* (*SSR*) 96-7p.

If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036. Once the first test is met, the ALJ must evaluate the credibility of the claimant and make specific findings supported by "clear and convincing" reasons. *Id.*

In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in his allegations of limitations or between his statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d at 597 n.5. The ALJ may also consider an unexplained failure to follow

treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). As explained by the Commissioner in his policy ruling, the ALJ need not totally reject a claimant's statements; he may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *SSR* 96-7p. "For example, an adjudicator may find credible an individual's statement as to the extent of the functional limitations or restrictions due to symptoms; *i.e.*, that the individual's abilities to lift and carry are compromised, but not to the degree alleged." *Id*. If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas,* 278 F.3d at 959; *Fair*, 885 F.2d at 604 ("credibility determinations are the province of the ALJ").

Here, there is no evidence of malingering. In explaining his basis for the RFC determination, the ALJ summarized Plaintiff's testimony, and found Plaintiff's functional limitations were not as limiting as alleged. He did not reject all of Plaintiff's complaints, and specifically noted he had given a fair amount of weight to Plaintiff's testimony regarding his exertional and visual limitations. (Tr. 17.) To support his credibility finding, the ALJ cited evidence of "relatively normal daily activities" that Plaintiff described, including chores, laundry, some yard work, driving, shopping, recreational fishing, socializing with his family, and attending to finances and hygiene. (Tr. 16, 453-57.) Consideration of these daily activities is acceptable in assessing the severity of alleged symptoms. 20 C.F.R.§ 404.1529(c)(3);

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

*Tommasetti*, 533 F.3d at 1039.  Although Plaintiff may not agree that his daily activities are "normal," the record reasonably supports the ALJ's conclusion that Plaintiff's self-reported daily activities are consistent with an ability to perform the sedentary work identified.

The ALJ also found objective medical reports, non-compliance with recommended treatment, and conservative treatment received since the alleged onset date did not support the degree of limitations alleged.  (Tr. 16; *see also* Tr. 156, 160, 408, 413, 416, 431.)  These also are "clear and convincing" reasons to discount symptom testimony.  *Tommasetti*, 533 F.3d at 1039; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).  Plaintiff's objection to the ALJ's finding that his failure to stop smoking impugns his credibility is without merit.  Case law is clear that failure to follow prescribed medical treatment (where treatment might relieve a complaint) is a basis for finding complaints "unjustified or exaggerated."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (*citing Fair,* 885 F.2d at 603); *see also Tommasetti*, 533 F.3d at 1041 (finding a lack of aggressive treatment program permissible to support adverse credibility finding); *Parra,* 481 F.3d at 750-51 (conservative treatment inconsistent with allegations of severe pain); *Thomas,* 278 F.3d at 959; *Smolen*, 80 F.3d at 1284.  In addition, the ALJ specifically linked Plaintiff's failure to stop smoking as a reason to discount his complaints of breathing.  (Tr. 413); *see Orn*, *supra,* at 638.

The ALJ rationally interpreted the evidence and articulated "clear and convincing" reasons for discounting the severity of

symptoms alleged. Substantial evidence reasonably supports the ALJ's determination that Plaintiff's symptoms are not as severe as alleged, and do not preclude sedentary work with the non-exertional limitations assessed.

**B. Lay Witness Testimony**

Plaintiff argues the ALJ improperly discounted Ms. Lemley's testimony describing the severity of his limitations. Ms. Lemley and Plaintiff's daughter live with Plaintiff, and according to Ms. Lemley, she is the mother of Plaintiff's daughter. (Tr. 461.) She testified that Plaintiff had difficulties cooking because of his eyesight, tired easily when mowing the lawn, and was very depressed with high anxiety. (Tr. 462-64.) Under the Regulations, Ms. Lemley's lay testimony is considered non-medical "other source" evidence. 20 C.F.R. § 404.1527(d); *SSR* 06-03p. Although the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232, lay testimony alone can never establish disability. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Nonetheless, an ALJ cannot disregard lay testimony without comment; the ALJ must give specific reasons "germane" to a lay witness's testimony before discounting it. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). In his policy ruling the Commissioner has noted that the Regulations do not provide explicit guidance on the evaluation of "other source" evidence. To assist adjudicators, he has identified certain factors that should be considered by the adjudicator in evaluating opinions of non-medical sources such as friends and relatives, *e.g.,* the

nature and extent of the relationship; whether the evidence is consistent with other evidence; and other factors that tend to support or refute the opinion. *SSR* 06-03p.

Here, the ALJ did not disregard Ms. Lemley's testimony. (Tr. 17.) He specifically addressed her observations, and gave them little weight because they were (1) not consistent with Plaintiff's conservative treatment history, and (2) not consistent with Plaintiff's reported daily activities. These are specific reasons, germane to Ms. Lemley, sufficient to discount her non-medical lay testimony. In explaining the weight given to the testimony, the ALJ also noted Ms. Lemley did not have the expertise to give an objective functional assessment, and her personal relationship might affect the objectivity of her observations. (Tr. 17.) Citing to a close, personal relationship, standing alone, would be unhelpful in evaluating credibility, but is a relevant factor to consider in discussing lay testimony, where, as here, there are other reasons. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *SSR* 06-03p.

Plaintiff's contention that the ALJ erroneously rejected Ms. Lemley's testimony because it was "not supported by the medical evidence" is inaccurate. (Ct. Rec. 18 at 18.) The ALJ noted Ms. Lemley's report of Plaintiff's difficulties were "not consistent with the claimant's conservative treatment history," *i.e.*, the medical relief he sought and/or received for the alleged difficulties. (Tr. 17.) This finding is supported by the evidence. For example, Ms. Lemley stated Plaintiff has difficulties with depression and anxiety, but the record does not reflect

significant complaints or treatment for these conditions.  Although the ALJ did not discuss these inconsistencies in the context of his consideration of Ms. Lemley's testimony, Plaintiff's conservative, routine treatment history is discussed throughout the decision, and the court may draw inferences from the ALJ's opinion.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  The evidence in its entirety reasonably supports the ALJ's findings giving little weight to Ms. Lemley's testimony.

**C.   Step Two:  Non-Severe Impairments**

Plaintiff argues the ALJ erred when he rejected mental health and sleep impairments as "frivolous." (Ct. Rec. 18 at 13.)  This characterization of the ALJ's finding, however, is inaccurate.  It is noted on independent review that the ALJ's step two findings do not include reference to "frivolous" complaints.  (*See* Tr. 14.) Rather, the ALJ identified other medical conditions appearing in the record and determined these impairments, "considered singly or together, have caused transient and mild symptoms and limitations, are well controlled with treatment, have persisted for less than twelve consecutive months or are otherwise not adequately supported by the medical evidence in the record."  (*Id*.)  These findings comport with provisions of the Social Security Administration regulations (Regulations) which describe a severe impairment as a medically determinable impairment that "significantly limits" a claimant's physical or mental ability to do basic work activities, and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), .1509.  The fact that an adjudicator determines medical conditions in the record do not fall within this regulatory definition does not mean he determined a claimant's complaints are

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

"frivolous," as suggested by Plaintiff.  Further, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Regulations.  *See, e.g., Young v. Sullivan,* 911 F.2d 180, 181 (9th Cir. 1990); *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 404.1508.  In addition, the Commissioner has passed policy rulings which guide dismissal of claims at step two.[2]  Those rulings state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *SSR* 85-28.  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."  Basic

---

[2] Social Security Rulings are issued to clarify the Regulations and policy.  They are not published in the federal register and do not have the force of law.  However, "deference" is given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341 n.3. (9th Cir. 1991). The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in *SSR* 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.* As explained by the Commissioner, "medical evidence alone" is evaluated to assess the effects of medically determinable impairments on a claimant's ability to perform basic work activities. *Id.*

**1. Mental Impairments**

At step two, the ALJ noted references in the record to depression and anxiety, and found the medical evidence did not support a finding that these problems caused more than mild limitations. He also found the impairments were controlled with medication, or did not meet the duration requirement. (Tr. 14.) Plaintiff argues this was error because the ALJ's only explanation was that medical evidence did not show severity.[3] This argument is unpersuasive because (1) as cited above, other reasons, which are supported by the record, were given, and (2) a lack of objective medical evidence is an appropriate reason to find non-severity. 20 C.F.R. § 404.1508 (objective medical evidence required to establish severity).

Citing *Brown v. Heckler*, 713 F.2d 441 (9th Cir. 1983), Plaintiff

---

[3] A mental impairment generally is considered not severe if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. § 404.1520a(d)(1).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

asserts the ALJ had a duty to develop the record to ascertain severity.  (Ct. Rec. 18 at 13.)  Plaintiff's reliance on *Brown* is misplaced.  In *Brown*, the claimant was appealing the termination of his disability benefits.  As explained by the *Brown* court, although the claimant has the burden of establishing a continuing disability in a termination case, the ALJ has the burden to rebut a presumption that "the [disabling] condition still exists," by coming forward with evidence that the claimant's condition has changed.  *Id.* at 442 (*citations omitted.*)  The court held that in terminating the claimant's benefits without a hearing, the ALJ had failed to assume his duty to develop the record with evidence to rebut the presumption.  The case was remanded for consideration of evidence of a changed condition and a hearing to take the claimant's oral testimony.  *Id.* at 443.

The case on review here is a proceeding to establish disability, in which the burden of proof is on the claimant to prove the existence of a severe physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508.  Once medical evidence is provided by the claimant, the Regulations state the agency "will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary."  20 C.F.R. § 404.1512 (d).  The ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence."  *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001) (*citing*

*Tonapetyan v. Halter),* 242 F.3d 1144, 1150 (9th Cir. 2001)).  Also, before that duty is triggered, there must be sufficient objective evidence in the record to suggest the "existence of a condition which could have a material impact on the disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.*  Further, in determining if a claimant is disabled, the ALJ is only required to seek additional evidence if the evidence already present consistently favors the claimant.  *Lewis v. Apfel*, 236 F.3d 503, 514-15 (9th Cir. 2001).

Here, the record includes medical history from 2000, over four years preceding Plaintiff's application through February 2008. (*See* Tr. 286-364, 400-07.)  The ALJ does not indicate the record was insufficient to evaluate the medical evidence presented. Plaintiff does not explain what ambiguity or inadequacy exists in the medical records presented that would trigger further development.  Instead he relies on his own testimony and that of Ms. Lemley as a basis for further development of the record.  (Ct. Rec. 18 at 13.)  However, their unsupported comments are insufficient to establish a diagnosis or trigger the ALJ's duty to obtain additional evidence.

Plaintiff's assertion that he has been "diagnosed" with "significant" depression and anxiety (Ct. Rec. 18 at 17, 18), is unsupported by the record.  An independent review of the medical evidence reveals one reference to generalized anxiety disorder with depression due to an inability to work on April 13, 2006.  (Tr. 408.)  The purported diagnosis was noted by David Tuning, PA-C, (Tr. 408) who, under the Regulations, is not qualified to make a medical

diagnosis. 20 C.F.R. § 404.1513 (a) and (d).[4]   Further, there is no objective medical evidence to establish depression or anxiety disorder.  In addition, the ALJ specifically asked Plaintiff at the hearing, in July 2008, if he were being treated for the psychological problems noted in April 2006, and Plaintiff responded he had been given some samples of medication but had not received further mental health treatment.  (Tr. 452, 459.)  The lack of a medical diagnosis from an acceptable medical source and Plaintiff's unambiguous testimony that he has not sought treatment do not favor Plaintiff in his claim of severe mental impairments.  The ALJ did not have a duty to obtain additional psychological evidence or testing and did not err in his step two finding of non-severe mental impairments.

### 2.   Sleep Apnea

Although Plaintiff does not identify medical evidence that supports a finding of severe sleep apnea, the record shows that in 2002, Plaintiff's physician recommended a sleep study.  (Tr. 146-47.)  The record does not include results from such a study, and Plaintiff testified he was unable to tolerate a sleep evaluation. (Tr. 446.)  As is the case with the allegations of severe mental impairments, the statements of Plaintiff and Ms. Lemley are insufficient to establish an impairment.  Further, treatment records from the alleged onset date to the time of the hearing do not

---

[4] Only a diagnosis from an acceptable medical source, *e.g.*, a licensed physician or psychologist, can establish a medically determinable impairment. *Nguyen*, 100 F.3d at 1467; *SSR* 06-03p. *See infra* at Section D.2. for a discussion of Mr. Tuning's opinions.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

mention significant sleep problems or assess a sleep disorder, and Plaintiff does not report medication for sleep problems. (Tr. 81.) Plaintiff did not meet his burden at step two, and there is no evidence in the record that would trigger the ALJ's duty to develop the record in regards to sleep apnea.

**D.    Evaluation of Medical Provider Opinions**

Plaintiff contends the ALJ erred in rejecting the opinions of Robert Egan, M.D., Plaintiff's eye specialist; Wayne Clark, M.D., a neurologist at the Oregon Health and Science University; and David Tuning, Plaintiff's treating physician's assistant (PA-C). Specifically, Plaintiff asserts the ALJ erred in his evaluation of Dr. Egan's opinion that he is "permanently disabled," and Dr. Clark's opinion that his significant vision loss limits his activities and would be problematic in employment that involves eyesight. Plaintiff also argues Mr. Tuning's disability opinion was improperly rejected. (Ct. Rec. 18 at 15-16.)

**1.    Acceptable Medical Sources**

The Regulations distinguish among the opinions of three types of acceptable medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. § 404.1527. A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), "As is the case with the opinion of a treating

physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (*citation omitted*). If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Drs. Egan and Clark are acceptable medical sources under the Regulations. As discussed above, their opinions must be rejected with "clear and convincing" reasons if uncontradicted.[5] The record

---

[5] Dr. Egan's opinion that Plaintiff is "permanently disabled" is contradicted by a non-examining agency physician who found Plaintiff had no exertional limitations, no neurological defects, right eye vision loss and a normal left eye. (Tr. 385-92.) However, the ALJ rejected the non-examining agency physician's opinion because evidence of Plaintiff's diagnosed obesity and history of back pain did not support the exertional RFC. (Tr. 17.) Also, in December 2005, examining physician James Ogden, doctor of optometry, contradicted Dr. Egan. In a letter to the Division of Disability Determination Services, Dr. Ogden stated Plaintiff's right eye had

shows Dr. Egan wrote a one paragraph letter. "To whom it may concern," dated May 26, 2005, stating that Plaintiff was "permanently disabled from driving and work due to a severe visual field defect." (Tr. 267, 271, 274, 283.) Another letter dated the same day from Dr. Egan to Dr. Clark discusses in detail Dr. Egan's findings from a follow-up eye exam after Plaintiff's stroke in February 2005. Dr. Egan stated Plaintiff's visual field defects "leave[] him indefinitely disabled from his work as a sanitation truck driver." (Tr. 269, 273.) (*Emphasis added*.) Functional vision loss was assessed in the right eye (OD vision 20/200), and the left eye (OS) examination showed 20/20 corrected visual acuity. (*Id*.) Further, at the hearing, Plaintiff testified he could read and write and drive in the daylight; he reported he watched television, helped with household chores, and liked to fish. He avoided cooking and could not do a jig-saw puzzle. (Tr. 452-54.) Consistent with Dr. Egan's letter to Dr. Clark, Plaintiff stated he had peripheral problems with his left eye. (Tr. 17, 451.)

The ALJ reasonably gave little weight Dr. Egan's brief, unexplained opinion letter, in which he concluded Plaintiff was permanently disabled from all work due to his eye condition. *Thomas*, 278 F.3d at 957. The ALJ noted the specific opinion being rejected,

20/200 vision, the left eye retained 20/20 vision with the left visual field impaired and Plaintiff was "partially disabled" but could not be a commercial driver with his eye condition. (Tr. 393.) Nonetheless, Dr. Egan is a treating specialist, and the court applies the "clear and convincing" standard to his opinions.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

and cited objective medical evidence and Plaintiff's testimony that contradicted the opinion of permanent disability. (Tr. 17, 267, 268 [Ex 7F1].)  As found by the ALJ, "While the claimant has experienced a loss of vision in his right eye and loss of peripheral vision, he retains 20/20 vision in his left eye.  He continues to drive an automobile.  His hobbies include watching televison and fishing." (Tr. 17.)   Further, as noted above, in Dr. Egan's more detailed letter to Dr. Clark, Dr. Egan clarified the scope of Plaintiff's impairment, stating Plaintiff was "disabled from his work as a sanitation truck driver." (Tr. 17, 269.)   This detailed letter is consistent with the objective medical evidence and with the ALJ's step four finding that Plaintiff could not perform his past work. The ALJ's reasoning is "clear and convincing"; and his rejection of the identified letter from Dr. Egan is supported by substantial evidence and free of legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(discrepancy between physician's opinion and notes from same day is a clear and convincing reason not to rely on opinion).

In addition, the ALJ properly found Dr. Egan did not consider vocational alternatives available to Plaintiff, and gave no specific limitations that would preclude all work activity. (Tr. 17.)  These are specific "clear and convincing" reasons, that are not only supported by other evidence from Dr. Egan, but also recognize that disability, as defined by the Social Security Act, is a determination reserved to the Commissioner after consideration of all the evidence in the record, including reliable vocational evidence. *SSR* 96-5p.  The ALJ did not err in rejecting Dr. Egan's conclusory opinion that Plaintiff was "permanently disabled from

driving and work."

Plaintiff also argues Dr. Clark's opinions expressed in an April 2005 treatment note were "implicitly rejected." (Ct. Rec. 18 at 16.) An ALJ need not discuss all evidence presented, and is required only to specifically explain the rejection of "substantial probative evidence." *Vincent v. Heckler*, 739, F.2d 1393, 1394-95 (9th Cir. 1993). An independent review of the record shows Dr. Clark's notes were made on April 1, 2005, less than two months after Plaintiff's cardiovascular accident and resultant vision problems. (Tr. 308, 317, 319.) Dr. Clark noted on examination that Plaintiff's "only remaining good vision is the right visual field from his left eye." He assessed Plaintiff was "currently unsafe to drive." (Tr. 308.) He also opined Plaintiff's employment ability was limited "in that he was previously a sanitary driver for a garbage company" and "employment that involves eyesight would be problematic." (*Id.*) Dr. Clark did not opine Plaintiff was permanently disabled after his stroke. Consistent with the record in its entirety, the ALJ found Plaintiff had reduced acuity in his right eye, was limited in depth perception, had limited peripheral vision in his left eye, and was restricted to daytime driving. He also found Plaintiff was not able to work as a truck driver. These limitations are substantially consistent with Dr. Clark's assessment; therefore, the ALJ did not need to reject Dr. Clark's opinions.

### 2. "Other source" Opinions

Mr. Tuning is not an acceptable medical source and, therefore, the standards discussed above do not apply to him. However, as a physician's assistant, Mr. Tuning is considered an "other source"

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

under the Regulations.   20 C.F.R. §§ 404.1513(d).   While only an acceptable medical source can establish a diagnosis or disability, *Nguyen*, 100 F.3d at 1467, the ALJ is required to consider observations by health care providers as to the effects of impairments on a claimant's ability to work.   *SSR* 06-03p.   Pursuant to *Dodrill,* 12 F.3d at 919, an ALJ is obligated to give reasons "germane" to "other source" testimony before discounting it.   The Commissioner has ruled that weight given to health care professionals opinions must be evaluated on the basis of certain factors, *e.g.,* their professional qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions, whether the other source opinion is well explained, and whether the other source "has a specialty or area of expertise related to the individual's impairment."   *SSR* 06-03p.   Nonetheless, only an acceptable medical source can establish an impairment.

Here Plaintiff appears to object to the ALJ's rejection of a specific treatment note by Mr. Tuning, dated February 22, 2008, in which Mr. Tuning stated Plaintiff was "certainly disabled and limited in his ability to work."[6] (Ct. Rec. 18 at 15; Tr. 17.)   The ALJ gave the following reasons for giving this opinion little

---

[6]   There is also a letter from Mr. Tuning, dated May 25, 2005, requesting an extension of short term disability, and indicating Plaintiff would not be able to return to his work as a truck driver due to his poor vision.   (Tr. 167.)   The ALJ was not required to reject this opinion as it is consistent with step four findings. (Tr. 17.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

weight: it was vague, there was no objective evidence to support the opinion, Mr. Tuning did not define disability, and he relied on Plaintiff's subjective complaints, which as discussed above were found not entirely credible. (Tr. 17.) These are specific, germane reasons for rejecting "other source" opinions. Further, the relevant factors do not weigh in favor of assigning Mr. Tuning's opinion additional weight. Although he is a treating health care provider, under the Regulations Mr. Tuning is not qualified to make a diagnosis or determine disability as defined by the Social Security Act. Further, his opinion is unexplained by treatment notes, and unsupported by objective reports from the eye and neurology specialists who considered Plaintiff unable to perform his past relevant work, but retained good visual acuity in his left eye. Finally, the record includes reports of Plaintiff's activities and testimony (discussed above) that are not consistent with permanent disability. The ALJ's rejection of Mr. Tuning's treatment note is without legal error and supported by substantial evidence.

**E.  Step Five**

Plaintiff argues the Commissioner did not meet his burden at step five, contending that he cannot perform the jobs identified by the vocational expert with the limitations supported by the record. (Ct. Rec. 18 at 19.) Specifically, he argues the hypothetical individual presented to and relied upon by the vocational expert at the hearing did not take into account his vision deficits. (*Id.* at 20.) This argument is unsupported by the record.

An ALJ may rely on vocational expert testimony if the hypothetical presented to the expert includes all functional limitations supported by the record and found credible by the ALJ.

*Bayliss*, 427 F.3d at 1217.  The hearing transcript shows the ALJ described in detail the vision limitations found in the medical records:

> [T]he record indicates he – his right eye is – they call it counting fingers, very limited vision in his right eye anyway.  His left eye has apparently good vision, although apparently there's a limited field of vision with little peripheral vision with the left eye.  So I'll say limited depth perception because of the one eye – essentially one eye vision.  He's limited to driving only during the daytime hours, yet wouldn't be able to see out of the corner of his eyes, things coming up from the side.

(Tr. 468-69.)

As reported by Dr. Egan, Plaintiff's visual acuity with correction in his left eye is 20/20.  In addition, the ALJ properly found Plaintiff's allegations regarding the severity of his visual limitations were not consistent with activities Plaintiff reported. (Tr. 16.)  Further, based on the specific visual limitations presented by the ALJ, the VE testified Plaintiff could perform two sedentary jobs: packing line worker and small products assembler. (Tr. 470.)  The *Dictionary of Occupational Titles* (*DICOT*), (4th ed., revised 1991)[7] supports the VE's testimony.  The jobs identified by *DICOT* number at the hearing indicate requirements of occasional or frequent near acuity and no requirement of far acuity, depth perception, color vision or field of vision.  *DICOT* 731.685-014; 713.687-027.  The ALJ's hypothetical was not deficient; therefore, the VE testimony is substantial evidence that supports the ALJ's

---

[7] At step five, the Commissioner may take judicial notice of information in the *DICOT* as reliable evidence in assessing work requirements of jobs in the national economy.  20 C.F.R. § 404.1566(d); *SSR* 00-4p.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

step five findings.  Where, as here, the ALJ's findings are based on a rational interpretation of substantial evidence, the Commissioner's determination will not be disturbed.

**CONCLUSION**

The ALJ's determination of disability is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED**;

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 22)** is **GRANTED**;

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file closed.

DATED October 22, 2009.


                    S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE